Go right ahead. Good morning, I'm Christopher Meyer. I'm here for the Pallinson's case. At the start, I'd just like to read an excerpt from Defendant Schlumberger's list of additional authorities. And I'm well aware of a federal rule of appellate procedure 32 to see. But I would just refer the court to page 23 of the law review article that they filed last week as additional authorities. Yeah, you need to write more law review articles. You know, that way you can avoid page limitation. That's right, you mentioned me. Where it says, once the dose fact is established, that dose must then be compared to the federal allowable limits. A federal regulatory consensus exists at 5,000 millirem a year for a nuclear worker, 100 millirem per year is safe for a member of the general public, and 25 millirem a year is safe for contaminated land. Those judgments are reserved to the federal regulator. If the dose is less than these limits, judgment must be entered for the defendant because defendant did not violate the PLA standard of care. If the dose exceeds the federal allowable limit, the jury may proceed to determine damages. And that's, in a nutshell, what our argument is here, because all of the appellants on May 21 of 2002, when they were working, they all received doses over the federal dose limit. That was an injury. And I would submit that that law review article, which was written by Slumber Jay's co-counsel, is a judicial admission in this case, that when you have a dose, an illegal dose, but you have to have damage. There's lots of things that can happen to you. God forbid, you could be walking down the street and somebody, again, God forbid, shoots a rifle. Let's say somebody drives a car recklessly and drives down a sidewalk and misses you. Could have been injured, but you weren't. I mean, I thought the whole dispute here was whether there was a comitable injury. Yes. That's right. And the ---- So you've gotten past that point. I don't think ---- I didn't think there was any dispute on this point. Yes, there was the kind of conduct on the defendant's part or the kind of incident or kind of exposure, let's say, that could cause an injury. I'm sorry? It doesn't necessarily cause an injury. You still have to show an injury. I agree. I think it does. I think a dose over the dose limit for members of the public is an injury that the NRC has determined is an unacceptable injury. And that's explained in our ---- Well, no, but that's really quite different. You can be exposed to all sorts of things that are the higher level than safe or than optimal and yet not be injured. You know, people smoke for years and have suffered no injury, and yet if you talk to doctors and clinicians and the like, they'll say even taking one puff of a cigarette is more than you should do because you could get injured by it. I think the dose limit is not a description of exposure. What it means is that the radiation has actually penetrated the person and done damage, biological damage to their tissues. It doesn't say that. It doesn't say that. That's what our proof was in the district court with our experts, that this is what happens when you receive this kind of radiation from cesium-137, that it has an impact, it does damage to your bodily cells. And our position is that whether that is cognizable as an injury should be decided under Montana law. But it also should be an injury because this is what the NRC has said. Anything above this dose limit, this amount of damage to a person is unacceptable. Well, I think you're mixing exposure with damage. You could have an exposure level that is above the recommended or the permissible level and yet not suffer an injury. I mean, for example, there might be limits to the amount of sound, the level of sound you have as a worker in your job. And if you're working out there with jets or something, you have to have ear coverings or else you might have damage to your hearing. But it's entirely possible to be out there and not have the ear muffs and be exposed to a high level of sound and yet have no auditory damage. Some people are more resilient than other people. You know, people's reactions differ as to whether you actually suffer injury. The illegal doses that they got, it wasn't simply exposure. I think in the Berg case, the allegation was that they had simply been exposed and then they had emotional distress. Okay. Let me get to this just a little bit. Do you have any specific evidence of actual injury on the part of your clients? Not that they suffered a level that could cause injury, that should cause injury, that would cause injury, that's hypothetical. Do you have anything that says my clients, here's the injury they suffered? Yes. Okay. Tell me what that is. We have the affidavits of Carl Shoemaker, the second one, where he describes how at the dose level that's set for members of the public, you have. . . Not by members of the public, not could or should or might. . . That's what I was going to respond to. Okay. Why don't you cut to the chase. We may be talking about injury differently. Maybe that's the difficulty. But we have the testimony from the affidavit of Carl Shoemaker as one example where he said that in this incident every person was receiving into their body a hundred. . . Is he a doctor? He is a health physicist. He is what? A health physicist. Did he examine these patients, these clients? No, he did not. How can he tell us whether these people were damaged or not? Because the dose fact is undisputed and he is giving his opinion based on radiation science, which explains what happens when someone receives a dose. A dose is different from just being exposed. You can be exposed to radiation, but it doesn't go into you. If you put your hand in a flame, right? I'm sorry? Let's say you put your hand in a fire. I mean, let's say you're exposed to fire. There are two ways of, you might say, well, anybody who holds his hand in fire for 25 seconds will suffer third-degree burns. So you can have somebody come in and give an expert of the day that's saying that. The other way would be to say, look, I've examined the hand. . . The derma, the subderma, you know, is exposed. I saw flesh. I saw bone. Okay? There are two different things. And the question is, do you have the second kind of thing where somebody actually looked at your clients and said, you know, here I observed changes in their actual physiology? It hasn't been observed in the sense that, in the way that one would look at a person who has a burn to the skin. But it is known to a degree of scientific certainty that when someone receives radiation and it penetrates the body, that it does damage the DNA. It does damage the cellular tissue. And then the question is whether it manifests itself in some kind of observable, diagnosable injury. Well, our position is that. . . That's what he says. He says the cells are damaged. Yes. In anybody. It doesn't make any difference whether these plaintiffs at that dosage. . . This is what he's saying, and this is what I understand you to be arguing, that we have to accept that you have established that that dosage damaged the DNA. But he goes on in paragraph three to say, however, the cell. . . Who are you? I'm your expert's affidavit. Okay. Page 28. So the damage caused by the gamma radiation inside a cell can be repaired by a number of mechanisms, some of which directly repair the damage to the DNA. But it may not. And it may either repair it, or if it doesn't work, it may lead to cancer. Those are all maybes. And I understood the issue in this case to be whether or not, since there's, for your clients, there's no identifiable medical diagnosis of some kind of manifestation of adverse, real adverse effects other than the subcellular damage that's been caused that would allow any damage to be established presently. And that without that, under the Berg concept, until you have some manifest kind of injury for which you could make a claim for even nominal damage, you can't get emotional distress or medical monitoring just for the fear that they will be the unlucky ones where the effect of the cell, subcellular cell damage, will lead to some actual, some cancer, for example. Is that sort of where we are on this? No. The cellular damage itself that is undisputed in this case from the illegal doses that our guys got, that itself is cognizable as damages under the Act and using Montana law to define bodily injury, which I think is required under 42 U.S.C. 2014HH. Berg, as I see it, did not require that there be a present medically diagnosable injury. No, it didn't say that. It said there had to be bodily injury. It said there had to be a bodily injury. We're saying that that question of whether there's a bodily injury must be decided under state law. Well, the notion which comes up in Sloboda's brief that you have to have a doctor who has to diagnose what's going on, that is taken from the regulations for extraordinary nuclear occurrences, which require that you have a substantial dispersal of radiation and then that you also have substantial damages, and then they go on to talk about objective clinical evidence involving five people who are hospitalized and die. But those same regulations also make clear that if you have a nuclear incident, which is not an extraordinary nuclear occurrence, it can still be compensable. You can still have compensation and get damages for that. And under Montana law, the cellular damages that our guys got because of the illegal doses that they received are cognizable as bodily injury. That's our argument there. So if you were into a Montana court and all you had was no objective illness of the kind, but rather that inside undetectable to the degree of how it's going to work out of cellular damage, as he's described, under Montana law you could get what kind of damages? Under Montana law, and it is objective because it's undisputed that there's been doses received, which means that the radiation has penetrated the body and caused injury. Now they have a condition, right? Well, they have damage, and they have damage. Under Montana law, then, they could get damages for emotional distress. And the reasonableness of their emotional distress would be a function of what are the implications of the injury, the damages that they have, but they would be able to get emotional distress. And in this case, too, they would also be able to get medical monitoring damages. And here there is that the undisputed illegal dose is objective evidence of the biological damage that they received. Wouldn't that go exactly contrary to Berg? I'm sorry? Wouldn't that exactly contravene what Berg held under Berg? No, I don't think so. Which had no monitoring. So now you want to get into the back door by saying, oh, we'll get into the amount of state law. But Berg said specifically not. As I understood Berg, it said there would be no medical monitoring in the absence of a physical injury. So I don't think that Berg precludes that. You just think you have better affidavits here. I'm sorry? You have better affidavits. You think your expert affidavits are better. I can't tell from reading Berg what evidence they had. I just know how it was described in there as being a claim for increased risk. And basically, as is described there, as a claim for emotional distress. Isn't that basically what you've done? You've sort of dressed up an increased risk claim and sort of tried to work your way around Berg by dressing it up as a bodily injury claim? No. And the reason why is that. It's affected to me. I must say, I had that suspicion as I was reading your case. Increased risk is very different from the damages that these guys got. Increased risk describes the possibility of stochastic effects from the radiation damage that they received. But there first has to be that radiation damage. And at the cellular level and to the DNA. But they got it just as well as your clients. The guys in Berg got it just as well as your clients. All you've done is say, we're going to tell you a little bit more about it. It's entirely possible your clients will never have any ill effects at all. Never have any problems with producing, never get any cancer, never have any ill effects whatsoever. It's possible, right? That they will have no cancer? Yes. No ill effects at all. Nothing that they can feel. They will have no problem producing. The children will be healthy. There will have no way in which their life is impacted by this. Well, it has been impacted. But if you mean in terms of disease or illness, it is possible that they will. Or injury or anything. In terms of physical. My position is that they have been injured already under Montana law. And that should apply. For what? They've been injured because they received illegal radiation doses that damaged their cells. That's an injury. That could lead to cancer. And that's what they're worried about. And it could lead to cancer. But our claim for bodily injury is based on the damage to their cells that they received. And it may or it may not be repaired. The difference with Berg. Let's talk about Berg. Because I'm looking at it. And Berg starts out by saying there is no. And this involves exposure to radiation from the Hanford Nuclear Reservation. And the opinion says, Here we deal with a substance, radiation, that is known to be capable of causing harm. Indeed, there is no threshold harmful dosage level for radiation. Because it can cause harm at any level. So they would accept what you're saying. But then when they go on to say on the doubling of the risk standard, it says, In order to establish causation, a plaintiff must show that the radiation was both capable of causing his or her disease and that it in fact caused her disease, his or her disease. And absent that showing, it says you can't get emotional distress. Now what you would say is that once you have received. Did you say disease? I'm sorry. Did you say cause disease? That's what it says. In order to establish causation, a plaintiff must show that the radiation was both capable of causing his or her disease and that it in fact caused his or her disease. And it said you haven't been able to establish that in the absence of any known physical, suffered any known physical injury. You can't rely on emotional distress to satisfy the, you don't get it, it doesn't come under bodily injury. And you're reading it into it because you're saying it's bodily injury as long as you've been exposed. And I agree that Berg doesn't flat out come out and deal with the facts of this case, but I'm trying to figure out how we write around it. Well, at the beginning I read from Slumber J's law review article where they said that once the dose fact is established, then the question is has someone been, has they received the dose above the applicable limit? In Berg, there is no discussion of the particular doses that the people received. No, but it's the part I read. Well, right, but I'm not. They assume you can make your part at any level. That's right, but there's no mention of particular doses. And in this case, what makes this very different from Berg is that it's undisputed that everyone received illegal doses. Above the limits were members of the public. That's not that. There is no dose fact in Berg. Here the doses are agreed upon. They are above the protective limits. And so there's that damage that is, that's undisputed. And it should be, whether it's a bodily injury, it's not disease, but our burden is to show bodily injury should be decided under Montana. Often these limits are set way below when you suffer any damage. These are safety limits. And they, it may be perfectly safe to go twice or three times that much, but sort of abundance of caution, because people do sometimes exceed limits, they set them lower. Is there any indication that, in fact, that exceeding those limits, in fact, causes injury? Yes. Well, those limits are set well below the doses that would be expected to cause substantial injury. Not injury generally. That was a point that we tried to address in our brief. And over the dose limit for members of the public, you have damage to the DNA in the cells, and that which is unacceptable. And that's why they have a dose limit which was brought down by a factor of five to increase protection for the public back in 1991. It's, as more radiation knowledge about the science of radiation gets better, and also we just mentioned in our affidavits about increased knowledge about survivors of the Japanese bombing and how at the levels that we're talking about of doses here, in this case, you have a connection with cancer. But in addition to that, the damage to the cells is undisputed at this level. And we don't have to show disease or sickness. We have to show bodily injury under Montana law. Okay. Your time. McHale in closing. Counsel. Thank you. Good morning. I'm Mr. Josie, and I am proud to represent Schlumberger in this appeal. This Court got it exactly right in the Inouye-Berg decision, and the Inouye-Berg decision does cover this case and this attempt at an end run around Inouye-Berg. Well, it doesn't cover this case. It covers that case. And that's why this case is that case. Isn't the history of jurisprudence lawyers reading cases and then responding with alternatives that differentiate that case? And isn't that what's happened here? And it's fair for them to try that. But if you read Inouye-Berg, those plaintiffs had doubling doses. They had significant amounts of radiation. They certainly would have had all these same subcellular effects. Now, one can argue, well, that particular statement, subcellular effects, you know, really wasn't discussed in the Berg opinion. Right. And that's why what I want to do in oral argument is show the Court some places in the statutory language where Berg didn't cite all the statutory support, because it wasn't really focused on this. But, for example, there is a case, Bradford v. Susquehanna, decided in 1984, which discusses subcellular changes. The Price-Anderson Act, the public liability action in the Price-Anderson Act was 1988, four years later. When Congress is presumed to know all the law that exists when it passes an act, when it defined the type of damages which this Court has power over in a public liability action, it used the phrase bodily injury, sickness, disease, or death. Congress did not use the phrases exposure, increased risk, medical monitoring, pure emotional distress, or subcellular changes. So if Congress didn't mention it, there is something that Berg didn't, Inouye Berg didn't really cite. But there is a prior case, and Congress did not adopt that language in Price-Anderson. But there's even a more detailed cite or support. I must say, that's pretty far-fetched. Where was that case from? Where is that case? That was a federal, it's a fed sub case, 1984, Inouye Berg, out of district. It's from, what, prestigious district of Alabama or something? District of Colorado. Ah. Is where it came from. It's a circuit. It's not a circuit court. A neighboring circuit. This is a court from a neighboring circuit. Obviously, Congress was well aware of it. The judge also, if you read Bradford v. Susquehanna, says that its opinion should be read narrowly. But there's other statutory language that's also important. For example, in the policy, the congressional findings for Price-Anderson, 42 U.S.C. Section 2012I, congressional findings are that, quote, the United States may make funds available for a portion of the damages suffered by the public from nuclear incidents and may limit the liability of those persons liable for such losses. Yes, Congress wanted to provide a source of funds, but their policy was not to expand liability. But won't you explain to me in plain English, why is it that if you suffer changes to your cells the way they claim, and I don't know anything about this, I'm not a scientist, but let's say you suffer changes to the structure of your cells, why isn't that bodily injury? I mean, cells are part of your body, right? A cell, these particular changes that can and cannot occur would occur with x-rays. Everybody who receives an x-ray would have an injury under their theory. The cells repair. For what? I mean, what if they do have an injury through x-rays? Probably soon. If you look at the policy reasons, and you can even go to Metro North. I mean, you don't dispute that if the dentist sort of sets the clock wrong and then when he's taking an x-ray, he burns a hole in your cheek because he leaves the x-ray machine too long, that you could sue for that, could you? If there is a burn, that's a physical injury. Okay. You can sue for that, certainly. Okay, so why can't you sue for damage to your cells? Because it equates to nothing other than exposure. The idea of subcellular changes is part of the linear no-threshold hypothesis. The surgeon general accepts that hypothesis for secondhand smoke. In the surgeon general's report on secondhand smoke, it says there's no threshold. Injury can occur from any amount of secondhand smoke. We are all ubiquitously exposed to radiation and all sorts of chemicals. We would all be injured, and we would all be consuming the federal court's time trying to claim that this particular exposure creates some increased risk calculated, and therefore we're entitled to some damages. Let's refine that slightly. You invoked x-ray and it evolved to the dental chair. If I sit in a dental chair and have an x-ray set at normal levels, and I'm wearing a lead protector because presumably there's some danger there and the technician goes into the other room, does the level of radiation that you get in a permissible normal dental x-ray cause subcellular injury of the kind that's being discussed here? We don't know because nobody can look into the cells to find that. Well, you have apparently written a book or an article which suggests that the level of radiation that was received here that, and not contesting the fact, that there has been, there is known and established subcellular damage. Is that correct? Science can't say. Is that correct, yes or no? There is no injury. No. What is this then? They look at epidemiology. They look at diseases. Well, what happens when my DNA gets... It repairs. Your DNA changes. These changes are undergone 40,000 times a day in every cell due to normal metabolism. It's part of the chemical changes. Our expert explained radiation can hit an atom and knock an electron out. That's called an ionization. What happens? The next instant, that cell which is positive and the electron which is negative go back together again. That may be, but we're not talking about general hypothesis. We're talking about a level, a known level here of radiation exposure, right? It's a safety standard. Okay, and it was above the safety standard. And that does not mean there's any change to any single one of these plaintiff's cells or their DNA. You say that the good doctor who opined in the Dr. Schumacher is just wrong, that there was no subcellular change brought by the degree of radiation? Yes, he is wrong. He can't prove that. He can't show it. He's repeating the linear no-threshold hypothesis. That's what he's saying. I mean, this is a mechanism in the linear no-threshold hypothesis, which is not a known fact. It's a hypothesis of risk, why risk may extend down below. See, we do studies and see there is no risk at this level. We don't see any increased cancers in people. But we say, well, maybe the risk does go. It might possibly. So what happens if five or ten years from now they develop cancer? Then they have a public liability action. Duty, breach of duty, proximate causation of damage. Finally, they have a damage. And they have a medical expert. And there's a statute of limitations. No. The statute of limitations would be dated discovery. It would be three years after the diagnosis of the bodily injury and then an expert telling them that's related to this radiation exposure. These cases are just premature. That's really the problem. It's not really dated discovery. It's three years after damage. That's right. That's right. See, the damage and, Your Honor, it's important to understand or to realize that this is congressional intent creating a federal cause of action in which the Congress limited the power of the federal judiciary. You only have authority over certain kinds of damages. You don't have authority over mere exposure. Well, normally we do. Yes, but you don't. I'm sorry. With all due respect. No, I understand. So what they've done is wrong. Price-Anderson treated this in a special way. And, in fact, Price-Anderson, Congress required the NRC to define the term damage. We were just talking about the term damage. And the NRC, when it defined it in 10 CFR 140.85, was referring to substantial damages from an ENO, which is an incident that injures many people. The NRC defined substantial to be five or more people having death or hospitalization. And the word damage they defined to be, quote, objective clinical evidence of physical injury, unquote. So you see, it all links together that Congress was saying, yes, if people really are injured by radiation, not just exposed, not just some hypothetical risk, not just emotional distress, but a real clinical injury, then they file their lawsuits. And the courts have jurisdictions. So you're saying that if I get a dosage of radiation that doesn't produce immediate radiation sickness or anything, but it puts me in a risk level of 90% for ovarian cancer, that wouldn't be me, but my wife gets it from a nuclear incident, that she would have no claim until she develops and is diagnosed with ovarian cancer, even though she has to live the rest of her life in fear that everything, that every bodily quirk that comes along could be a manifestation. So she runs to the doctor at the slightest sign of any change. You're saying there's no claim for that. I'm saying there is no claim until the cancer is diagnosed and then she has her family. Let me take this just one step further. Let's say the doctor says, look, given your age and health and so on, given the exposure and the likelihood, we think what you ought to do is have your ovaries removed. You know, that's a healthy thing to do, because these things are very hard to detect once they develop, and we think there's a very high risk you will develop this, and we might not be able, even despite very careful monitoring, we might not be able to catch it in time. So the thing to do is to go in and have the ovaries removed, and that's the way you'll be completely safe. Still no injury. Still no damage. In fact, there's a case somewhat on point, Bradford versus, no, not Bradford, just a minute, Bubash versus Philadelphia Electric. It's cited in our briefs. I believe the husband received radiation exposure at work, and the lady underwent an abortion. She was pregnant because she was afraid that someone might affect her baby and sued, and the court said, look, this exposure the husband received is a transitory effect. That's not what we're talking about. That's not responsive at all. We're talking about exposure of a woman to a level of radiation that is diagnosed as 90% probable to create ovarian cancer, which then puts the, under your theory, she's on her own until she's lucky enough for monetary purposes to get symptoms diagnosable as ovarian cancer. That's the choice. At which point then you come in and argue, well, we don't know that it's really ovarian cancer. Those symptoms are also consistent with, you know, Asian flu. Well, first, that's the choice Congress made. Well, no, we don't know that that's the choice Congress made. I believe it is because Congress And you're assuming a conclusion because you're assuming that the cell restructuring that has likely occurred isn't bodily injury. Because Congress didn't list increased risk. It didn't say if you have a 90% chance of cancer. It didn't say you're assuming your conclusion. I think I'm reading the plain meaning of the language, the text of what Congress passed. I just need to ask this question. If we deny plaintiffs relief here and they develop cancer 10 years from now, will you come back and say they claim they were damaged in 2007 and assert a statute of limitations? No, no. You could not do that. No. I just want you on the record saying that. And I've been on the record saying that to every client, Your Honor. That's right. No, you cannot assert the statute of limitations. Okay. Thank you. Thank you. Anything further? I don't know if you have any time left over. Case, thank you, counsel. Case, if I may say, submitted, we are going to take a short break before the last court. I'm going to quit. No more than about five minutes, okay? All rise. This court is adjourned.
judges: Kozinski, Fisher, Guilford